CONNECTICUT MUT. LIFE INS. CO. v. McWHIRTER.

(Circuit Court of Appeals, Ninth Circuit. April 6, 1896.)

No. 195.

1. PLEADING—LIFE INSURANCE POLICY.
    It is not necessary that the complaint in an action on a policy of life insurance should set forth the application for such policy, or the answers to all the questions contained therein.
2. SAME—LAPSE OF TIME—DATE OF COMMENCEMENT OF ACTION.
    A policy of life insurance provided that no action upon it should be brought until 30 days after the receipt by the insurer of proofs of the death of the insured. The complaint in an action upon the policy alleged that proofs of death were delivered to and received by the insurer on a certain date, which was more than 30 days before the filing of the complaint, upon which alone the summons by which the action was commenced could be issued. Held, that reference could be made to the date of filing the complaint, to determine whether the action was prematurely brought, and the omission of a distinct allegation that the 30 days had elapsed did not render the complaint demurrable.
3. EVIDENCE—LIFE INSURANCE—DECLARATION OF INSURED—SUICIDE.
    In an action on a policy of life insurance, in which one of the defences is the alleged suicide of the insured, it is not error to exclude evidence of declarations of the insured, made four years before his death, that in a certain contingency, not shown to have occurred, he would commit suicide.
4. LIFE INSURANCE—SUICIDE—PRESUMPTION.
    In an action upon a policy of life insurance, the presumption is that the insured did not kill himself.
5. SAME—APPLICATION—GENERAL QUESTION—THREATS OF BODILY HARM.
    When an applicant for life insurance is asked, at the end of a long series of questions, whether there is any fact relating to his physical condition, personal or family history, with which the insurer ought to be made acquainted, all that can be required is an honest answer, as to which, in an action on the policy, the jury must decide; and the court is not bound, as a matter of law, to instruct them that a failure to disclose, in answer to such question, that the insured had enemies who were reported to have threatened his life, or that he was apprehensive of assassination, would avoid the policy.
6. PRACTICE—CHARGING JURY—IGNORING ISSUE—HARMLESS ERROR.
    Where two issues are made by the pleadings in an action, but upon one of them the defendant's evidence wholly fails to support his contention, an instruction to the jury that the entire theory of the defense is based upon his contention as to the other issue does not constitute error which should reverse a judgment against the defendant.

In Error to the Circuit Court of the United States for the Northern District of California.

James H. Budd and J. C. Campbell, for plaintiff in error.
Crittenden Thornton, for defendant in error.

Before KNOWLES, MORROW, and BELLINGER, District Judges.

KNOWLES, District Judge.    In this action, Nannie S. McWhirter recovered a judgment of $16,137.50 against the Connecticut Mutual Life Insurance Company.    The action was based upon two life insurance policies issued to Louis B. McWhirter, insuring his life.    The first of these policies was for the sum of $5,000, dated on the 18th day of December, 1891. The amount of the annual premium on this policy was $186.50.    This was to be paid for 20 years.    The $5,000 was to be paid, in case of the death of Louis B. McWhirter, to Nannie S. McWhirter, who was his wife, in the event that she survived him. The second policy was for the sum of $10,000, dated on the 15th day of March, 1892.    The amount of annual premium on this policy was $289.50.    This amount was to be paid each year for 20 years. The said $10,000 was to be paid to the said Nannie S. McWhirter if she survived him at his death.    On the 29th day of August, 1892, the said Louis B. McWhirter was found in the back yard to his house, shot.    The wound was in the vicinity of his heart.    From this wound he died in a few minutes.    It is claimed by the complainant that he was murdered.    The Connecticut Mutual Life Insurance Company claims that he committed suicide.    It is also claimed by the said company that said Louis B. McWhirter did not correctly respond to a question propounded to him when he made his application to said company for insurance; that this wrong existed at the time each application was made; that his answer to said question was a part of his policy, and he warranted its correctness; hence the policy was void on account of this breach of warranty.    The question which it is stated he did not correctly answer is as follows:

"Is there any fact relating to your physical condition, personal or family history, or habits, which has not been stated in the answer to the foregoing question, and with which the company ought to be made acquainted?"

The answer to this was, "No."

The matter in which it is claimed this answer was false, and to the knowledge of said Louis B. McWhirter, is that at said times he knew that he had enemies, and that his life had been threatened, and he believed his life was in danger.    The grounds urged for the setting aside of the judgment in this case, and the ordering a retrial thereof, are as follows:

First. The demurrer to the complaint interposed by the plaintiff in error should have been sustained.

Second. The rejection of the evidence of one E. F. Bernhard.

Third. Charging of the jury by the court that the presumption was that McWhirter did not kill himself, and that this presumption had to be overcome by evidence on the part of the defendant.

Fourth. That the court erred in not giving, as a part of his charge, the following instruction requested by defendant:

"The question and answer referred to in instruction eleven were a warranty upon the part of Louis B. McWhirter that there was no fact in his personal history that would increase the hazard, or increase the premium, of said insurance; and you are instructed that the only question for you to determine is as to whether or not said warranty was true. It makes no difference whether said representation was material or not. If you find from the evidence that the same was untrue, then it is your duty to find a verdict for defendant."

The failure of the court to give this instruction as requested was excepted to. The question and answer referred to is the one set forth above.

The fifth ground is that the court erred in giving the following instruction:

"You are further instructed that the entire theory of defense in this case is based upon the assumption that Louis B. McWhirter prepared the clubs and the mask found upon the premises shortly after the killing; that six shots were fired on that occasion; that five, and only five, were fired into the fences and outhouses upon the premises; and that McWhirter fired the sixth into his own body, and through his own heart, which caused his death. This theory of defense is founded upon the allegation that McWhirter prepared the surroundings to indicate a sham assassination or scene of murder, and then killed himself. If you should find that Louis B. McWhirter did not make such preparations, that he did not saw the clubs found upon his premises, that he did not prepare the mask, that he did not own or possess both pistols, and that he did not fire all the shots, the bullet holes of which are found in the fence and outhouses, and on his own body, your verdict should be for the plaintiff."

To the giving of this instruction, defendant excepted.

The sixth error complained of is the refusal of the court to give the following instruction:

"In the applications which have been introduced in evidence the following questions were asked the deceased, and the following answers given by the deceased: 'Is. there any fact relating to your physical condition, personal or family history, or habits, which has not been stated in the answers to the foregoing questions, and with which the company ought to be made acquainted?' The answer to that question was, 'No.' And furthermore it was, by the terms of said policies and applications, agreed that the questions and answers to each and every question was true. If you believe from the evidence in this case that at the time of the application for insurance made by said Louis B. McWhirter, and at the time of the delivery of the policies of insurance which are the subject of this controversy, said Louis B. McWhirter had been threatened or was apprehensive of being assassinated, then I instruct you that such facts were a part of the personal history of said Louis B. McWhirter, and should have been communicated to the defendant insurance company, and the failure to so communicate them avoids the policy, and you should find a verdict for the defendant."

The seventh and last ground of error set forth is a refusal of the court to give the following instruction to the jury:

"Warranties are a part of the contract of insurance, upon which the insurer, as well as the insured, has a right to rely; and if you find from the evidence that the deceased, Louis B. McWhirter, in answer to the question asked him as to whether or not there was any fact in his personal history which said company ought to know, said, 'No,' then I instruct you that if it were a fact, and if you so find from the evidence, that prior to the time of said application and said answer the said Louis B. McWhirter had had difficulties with certain persons who threatened his life, and that he was then apprehensive of

assassination, that was such a fact as he should have communicated to said company, and his failure to communicate such fact to said company was a breach of warranty contained in said application, and you should find a verdict for the defendant."

In considering the first point presented, the question arises as to whether or not the plaintiff was required by the rules of pleading to set forth, as a part of the contract or policy of insurance, the application made by Louis B. McWhirter. It is true that the policy recites that "in consideration of the application for this insurance, which is the basis of, and a part of, this contract, and a copy whereof is hereunto annexed, and of the several answers, warranties, and agreements therein contained, and of the annual premium," etc., defendant does insure the life of said McWhirter. I see no object to be obtained by requiring all of the answers specified in the application to be set forth. It is not a part of the case plaintiff was required to make out, to prove that all of these answers were true. It is urged that the contract sued on, in hæc verba, or according to its legal effect, should be set forth. It may be said there is no legal effect of these answers that can be set forth. There is some conflict of authority upon the point here presented. In the following cases it is held that the application, with all its answers, should be set forth: Gilmore v. Insurance Co., 55 Cal. 124; Tischler v. Insurance Co., 66 Cal. 178, 4 Pac. 1169. In this last case the former is cited with approval. But it should be observed that it is stated that a portion of the contract that might prove material was omitted, and a demurrer was sustained to the complaint for that reason. Bidwell v. Insurance Co., 3 Sawy. 261, Fed. Cas. No. 1,393. In the following cases it is held that the application need not be set forth in the complaint, namely: Blasingame v. Insurance Co., 75 Cal. 633, 17 Pac. 925; Insurance Co. v. P. J. Willis & Bro., 8 C. C. A. 594, 60 Fed. 236; Herron v. Insurance Co., 28 Ill. 235; Insurance Co. v. Pickel (Ind. Sup.) 21 N. E. 546; Jacobs v. Insurance Co., 1 MacArthur, 632; May, Ins. § 587. The Code of California requires that the complaint shall contain a statement of the facts constituting a cause of action, in ordinary and concise language. With this provision in view, it would appear that the plaintiff should not be required to state a large amount of facts which do not in any manner constitute any statement of facts constituting his cause of action, and facts which he is not required to prove. In Ship. Com. Law Pl. 12, it is stated of the declaration in assumpsit:

"The contract must be stated with certainty and precision, and it may be set forth in terms, or according to its legal effect, and only such parts need be set forth as show the entire act to be done in pursuance of the consideration stated."

In note 47 on said page it is said:

"But not facts as to which no breach is claimed."

In support of this, Miles v. Sheward, 8 East, 7, is cited.

In Henry v. Cleland, 14 Johns. 400, it is said:

"The plaintiff is not obliged to set out the whole agreement. It is enough for him to state so much as constitutes the agreement, the breach of which is relied on."

The same view is maintained in Sandford v. Halsey, 2 Denio, 235. The provisions of the California Code as to pleading do not, I think, abrogate these common-law rules as to pleading, and make it necessary for a plaintiff to set forth facts upon which no issue is sought. The contract, therefore, was sufficiently described in the complaint, and the demurrer properly overruled. If, however, we should be mistaken in this view, it appears that all of the application was made a part of the answer, and is fully presented to the court. When a plaintiff omits to state material facts in his complaint, and these facts are set forth in the answer, then the defect in the complaint is cured or waived. This point was considered in this court in the case of Richardson v. Green, 9 C. C. A. 565, 61 Fed. 423.

It is also urged that the complaint does not state that 30 days had elapsed after the date the proofs of the death of McWhirter were received at the office of the Connecticut Mutual Life Insurance Company, at Hartford, Conn., and is therefore defective. The view taken is that the complaint must itself show that the action is not premature; that is, commenced before it accrued. It is stated in the complaint that due notice and satisfactory evidence of the death of said assured Louis B. McWhirter were delivered to and received by the defendant at its office at Hartford, Conn., prior to the 1st day of December, 1892. In Moak, Van Santv. Pl. p. 171, it is stated:

"Nor, indeed, would a demurrer lie to a declaration, unless it appeared affirmatively, upon its face, that the cause of action had not accrued when the suit was commenced. The rule has been fully recognized under the Code."

The case of Maynard v. Talcott, 11 Barb. 570, supports this view.

We find that the complaint was filed on the 7th day of January, 1893. This was more than 30 days after the serving of the proofs of death upon the plaintiff in error. Under the Code of California, it seems that an action is commenced by filing a complaint, and the issuing of a summons thereon. Certainly no summons could issue until the complaint was filed. The question is here presented as to whether we can recur to the filing of the complaint to show that the action was not premature. At common law an action was commenced by the issuing of the writ of summons, and not at the time of filing the declaration. In determining whether or not an action was commenced before it accrued, there could be a reference made to the date of the issuing of the writ; and if it was found, from the allegations in the declaration, that the action had not accrued at the time of issuing the writ, a general demurrer would then lie to the declaration. Waring v. Yates, 10 Johns. 119; Cheetham v. Lewis, 3 Johns. 43; Lowry v. Lawrence, 1 Caines, 71; 1 Chit. Pl. 262–265. In these cases it will be seen that the records showing the date of the issuing of the writs were considered, in ruling upon the demurrer. There are many allegations in a complaint that must be considered with reference to the filing thereof in court. For instance, in the action to recover the possession of real property, the allegations that the defendant now withholds the possession thereof from plaintiff refers to the date of the filing of the complaint. In the case of the allegation in an action upon a contract or promissory

note, when it is alleged that the payment is to be made upon a certain date, and, in assigning the breach, it is alleged which time has now elapsed, this must refer to the date of filing of the complaint. In this case, after setting forth in the complaint the contract of insurance, the death of McWhirter, the date the proofs of his death were filed in the office of the insurance company, then there is this allegation: That said defendant, although often requested, has not paid said sum of five thousand dollars, in one cause of action, and ten thousand dollars, in the other, or any part thereof.

This allegation must be construed as having the effect of saying that neither of these sums has been paid up to the date of filing the complaint. The cases of Cowan v. Insurance Co., 78 Cal. 188, 20 Pac. 408, and Doyle v. Insurance Co., 44 Cal. 267, were not made when the same state of facts existed as are presented in this case. In these cases there is no date alleged as to when the proofs were made or filed in the proper office, and hence it could not be seen by reference to the filing of the complaint whether the proper time had elapsed after the proofs to show that the cause of action had accrued. In view of these considerations, I think it sufficiently appears that the cause of action accrued before the filing of the complaint; hence the demurrer was not well taken upon this point. It should also be noted that after the demurrer was overruled the insurance company filed its answer, in which there is no pretense that the cause of action had not accrued, and went to trial upon the merits of the case. Unless the complaint clearly failed to state a cause of action, such action waived the demurrer. Stanton v. Embrey, 93 U. S. 548.

I can see no error in rejecting the evidence of Bernhard. It was sought to show that McWhirter, some four years before his death, said to Bernhard that, if he ever did anything which would bring disgrace upon him or his family, he would kill himself. There was no attempt to show that McWhirter had, as a matter of fact, done anything that had brought disgrace upon himself or his family. It is true, he had been arrested upon a charge which he declared was without foundation. This does not show that he had done the act which would induce his suicide according to his own declaration. That he had ever, upon any conditions, thought of committing suicide, seems to have been regarded as pertinent in the case. I do not conceive this to be correct. Many a man has talked of suicide in the way McWhirter did upon that occasion without any intention of committing the deed. Then, the purpose expressed was so conditioned and so remote that I cannot conceive that any presumptions were raised upon the point at issue. If there are any presumptions to be raised by such a declaration, I would say that it would be that McWhirter was a man so sensitive as to his honor that he would not purpose the committing of suicide with the view of defrauding a life insurance company.

The third alleged error presented for consideration is as to the charge of the court to the jury that the presumption was that McWhirter did not kill himself. The decisions of the supreme court sustain this charge. Home Ben. Ass'n v. Sargent. 142 U. S. 691, 12

Sup. Ct. 332; Insurance Co. v. Akens, 150 U. S. 468, 14 Sup. Ct. 155; Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360. In this last case the supreme court said:

"In respect to the issue as to suicide, the court instructed the jury that self-destruction was not to be presumed. In Mallory v. Insurance Co., 47 N. Y. 52, 54, which was a suit upon an accident policy, it appeared that the death was caused either by accidental injury, or by the suicidal act of the deceased. 'But the court properly said the presumption is against the latter.' 'It is contrary to the general conduct of mankind. It shows gross moral turpitude in a sane person.' Did the court err in saying to the jury, upon the issue as to suicide, the law was for the plaintiff, unless that presumption was overcome by competent evidence. This question must be answered in the negative."

What presumption was it that the court had reference to? The presumption that the deceased did not kill himself? There is nothing in the statement of the court in the balance of the opinion in this case that contradicts this view. The plaintiff in error, in the court below, assumed the burden of proof, and undertook to show that McWhirter did kill himself. This was upon the theory that the presumption was that McWhirter did not commit suicide. The contention of the plaintiff in error cannot be maintained upon this assignment.

In considering the fourth error alleged by plaintiff in error, the question is presented as to the nature of the question specified in the instruction asked. In construing this question, we are confronted by the rule that the policy must be given that meaning which would be most favorable to the insured. May, Ins. § 175. And when there is any doubt as to the character of a statement in the application for a policy, which is made a part thereof, "a court should lean against that construction which imposes upon the assured the obligations of a warranty." National Bank v. Insurance Co., 95 U. S. 673. The language, "Is there any fact relating to your physical condition, personal or family history, * * * with which the company ought to be made acquainted?" with these rules in view, ought to be classed as calling for an opinion on the part of McWhirter. A great many questions had been asked him upon almost every conceivable question connected with his family history, his physical condition and habits, and he was required to answer many of them "Yes" or "No"; then, finally, this question. Certainly, in considering whether there was any matter connected with his personal history which the company ought to know, he must determine that it would not be required of him to state that he had played marbles when a boy, had been whipped at school, or had loved his wife when he married her. When an opinion is asked, all that could be required would be an honest answer. National Bank v. Insurance Co., supra; Moulor v. Insurance Co., 111 U. S. 335–345, 4 Sup. Ct. 466. Whether he made an honest answer was a matter for the jury to determine. But, if it were a matter for the court, it would hardly be thought that he would consider it an important matter to state that he had enemies,—political enemies,—and his life had been threatened by them. Would any one suppose that in an agricultural community in the state of California, where churches and schools abound, and the

public press has abundant circulation, that a threat to take a man's life on account of political differences would be considered of importance? Considering what we know of such communities, and the causes which have led to murders, could any cool and reasonable man say he thought such a threat would be carried into execution? How many cases of this kind can it be asserted have occurred in such a community, in the history of this country, or even in the state of California? The fact that the deceased may have placed some stress upon this amounts to nothing. The presentiments of death that are said to come now and then to the mind of a well person, and the prophecies of a fortune teller, are at times said to have made impressions upon strong men; but would an insurance company consider such matters important, when taking the application of a person seeking a life insurance? I cannot think it would. If so, then such companies had better enlarge their long list of exhausting questions, and not leave it to the judgment of applicants for insurance policies to make known such matters.

The fifth error complained of should be considered with reference to the balance of the charge to the jury. In one part of the charge the court said:

"You are further instructed that any threats, the suppression or concealment of which by the deceased would constitute a defense to this action, must be actual threats of bodily harm by third persons known to the deceased, and which would affect the fears and apprehensions of a reasonable man, and that mere rumors or apprehensions of the unlawful acts of personal or political enemies, not amounting to tangible or specific threats of bodily harm or injury, would not, even if concealed from the defendant, constitute a defense to this action."

I have been unable to find any evidence of any such threats as are here specified in the record. There is evidence of statements of political enemies, of apprehensions of bodily injury, but nowhere any evidence of threats of bodily harm by third persons known to the deceased. While in the pleadings there were the two issues,—one of failure to give a proper statement in regard to his personal history, and the other that of suicide,—and while these issues were sought to be presented in the evidence, this instruction, in effect, eliminates the first issue from the case. It was not sufficiently supported by the evidence. We have already stated that vague impressions or presentiments occurring to a man, that he will be killed, were not required to be stated in answer to any question asked McWhirter. Evidently the court felt that under the evidence the only real issue in the case was the suicide of the deceased, McWhirter. The statement of the court that there were two issues in the case must, in the light of the whole charge and the evidence, be confined to the issues made by the pleadings, and not as maintained by the evidence. Under these circumstances, there is no error presented upon this point which should reverse the judgment of the court below. Where the error complained of could not have prejudiced the rights of a party in the case, a judgment should not be reversed by an appellate court. Lancaster v. Collins, 115 U. S. 222, 6 Sup. Ct. 33; Hornbuckle v. Stafford, 111 U. S. 389, 4 Sup. Ct. 515. The statement that there

were two issues for trial, when there was in fact only one, could not have prejudiced plaintiff in error.

The sixth and seventh points made in the brief, in regard to the refusal of the court to give instructions 11 and 13 asked by plaintiff in error, may be considered together. In both of these instructions the position is taken that it was the absolute duty of McWhirter to inform plaintiff in error, in answer to the question touching his personal history, that he had been threatened or was apprehensive of being assassinated, and that a failure to so state was a breach of warranty which avoided the policies of insurance in this case. I have already stated that I think this question referred to called upon McWhirter to express an opinion as to whether there was anything in his personal history which he ought to communicate to the insurance company, and that all that was required of him was to act honestly and fairly in this matter. These instructions entirely ignore this view. It was therefore right and proper for the court to have refused them. With this view of the case as presented to the court, the judgment of the court below ought to be affirmed. And it is therefore hereby ordered that the judgment of the circuit court before which this case was tried be, and the same is hereby, affirmed, with costs.