713 A.2d 569

RICHARD WEINSTEIN, PLAINTIFF–RESPONDENT, v. MUTUAL BENEFIT LIFE IN REHABILITATION, AS SUCCESSOR TO MUTUAL BENEFIT LIFE INSURANCE COMPANY, DEFENDANT–APPELLANT, AND ALTER & COMPANY, INC., AND JEFFREY DUNST,[1] DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 23, 1998—Decided July 10, 1998.

[1] The record reflects that plaintiff settled his claim against the other defendants.

610

Before Judges SKILLMAN, EICHEN and STEINBERG.[2]

*Robert E. Bennett* argued the cause for appellant (*Hill Wallack,* attorneys; *Mr. Bennett* on the brief).

No brief was filed on behalf of respondent.

No other parties participated in this appeal.

The opinion of the court was delivered by

EICHEN, J.A.D.

The primary issue presented on this appeal is whether certain misrepresentations made by plaintiff Richard Weinstein concerning his income and medical history in an application for a disability income insurance policy entitled defendant Mutual Benefit Life in Rehabilitation (Mutual Benefit)[3] to rescind the policy. The motion judge concluded that the misrepresentations did not bar plaintiff's recovery under the policy because Mutual Benefit was not adversely affected by the false statements and that reformation of the policy was a more equitable remedy. Accordingly, the judge

---

[2] Judge Steinberg did not participate in oral argument. However, appellant consented to his participation in the decision.

[3] Mutual Benefit Life in Rehabilitation is successor to Mutual Benefit Life Insurance Company. We use the name "Mutual Benefit" interchangeably to refer to both entities in this opinion since any distinctions between them are not pertinent to this appeal.

denied Mutual Benefit's motion for summary judgment on its counterclaim for rescission and its motion for reconsideration and entered final judgment in favor of plaintiff against Mutual Benefit in the stipulated sum of $81,508, representing plaintiff's policy benefits, inclusive of costs and prejudgment interest. Mutual Benefit appeals and we reverse.

In May 1991, plaintiff applied for a disability income insurance policy (the policy) from Mutual Benefit. On July 1, 1991, the policy was issued. It contained an incontestability clause which stated, in pertinent part:

> After this policy has been in force for two years, we will not reduce or deny a claim for benefits on the basis of the statements in the application, except fraudulent misstatements.

In June 1992, while the policy was still in its contestability period, plaintiff submitted a claim to Mutual Benefit contending that he had become disabled due to a severe lower back condition. During the course of investigating the claim, Mutual Benefit learned that plaintiff had been diagnosed and treated for problems with his right knee in May 1989. The record reveals that plaintiff had "a right medial meniscectomy" in 1981 which he failed to include in response to questions on the application. The record also discloses that plaintiff continued to have problems with his knee and that he and his treating physician discussed and contemplated various surgical procedures to correct the condition. Plaintiff had not disclosed this medical history in his policy application.

In addition, Mutual Benefit discovered that plaintiff had been untruthful in stating his income for the year 1990. Specifically, plaintiff had indicated in the application that his earned income was $185,000, whereas his accountant verified that plaintiff had earned only $118,000 that year. On January 13, 1993, Mutual Benefit declined plaintiff's claim for benefits based upon the "material misrepresentations" contained in plaintiff's application.[4]

---

[4] Plaintiff does not dispute that his answers were false or that the questions in the application were objective. See Massachusetts Mut. Life Ins. Co. v. Manzo, 122 N.J. 104, 114, 584 A.2d 190 (1991).

In support of its motion for summary judgment, Mutual Benefit submitted a certification from George S. Chumas, the director of underwriting, indicating that if plaintiff's actual medical history had been disclosed, it "would have affected [Mutual Benefit's] assessment of the disability insurance risk presented by Mr. Weinstein," and plaintiff's policy would not have been issued as written. He stated that "a different and less favorable policy, one which would have included an exclusion of coverage rider for the right knee," would have been offered. Mr. Chumas also stated that because plaintiff's actual earned income was substantially less than indicated on the application, his monthly benefits also would have been substantially less.[5] He further indicated that "[b]ased upon [plaintiff's] nondisclosed medical history and misrepresentation of his 1990 earned income, [Mutual Benefit] was not provided with the necessary information to accurately and appropriately underwrite Mr. Weinstein's disability policy."

During argument on the summary judgment and reconsideration motions, the motion judge determined that rescission is required only where the "false statement[s] materially affect[ ] either the acceptance of the risk or the hazard assumed by the insurer," quoting *N.J.S.A.* 17B:24–3d and citing *Massachusetts Mut. Life Ins. Co. v. Manzo*, 122 *N.J.* 104, 584 *A.*2d 190 (1991) and *Ledley v. William Penn Life Ins. Co.*, 138 *N.J.* 627, 651 *A.*2d 92 (1995). Because Mutual Benefit had conceded that it would have issued some form of policy to plaintiff even if he had disclosed all of the relevant information, the judge concluded that the false statements had not "materially affected the hazard assumed" by Mutual Benefit. The judge reasoned that Mutual Benefit was not "adversely affected" by the earnings misrepresentation or the withheld medical information concerning plaintiff's knee because it simply would have excluded coverage for plaintiff's knee (which was not the subject of the disability claim) and paid a reduced benefit based on plaintiff's lower income. The judge also noted

---

[5] Instead of a monthly benefit of $7,000, plaintiff would have been entitled to only $5,600.

that the premium charged to plaintiff was already one-third higher than the "standard" premium because of plaintiff's high blood pressure. Accordingly, the judge concluded that the misrepresentations were not "material" justifying denial of coverage under the policy.

The Legislature defined the term "materiality" in the disjunctive, providing that a false statement would bar recovery if it affects *"either* the acceptance of the risk *or* the hazard assumed by the insurer." *N.J.S.A.* 17B:24–3d (emphasis added). In *Manzo,* our Supreme Court concluded that no causal connection between an insured's false statements and the ultimate cause of death is required to bar recovery. In so concluding, the Court stated that "[a]n insurer is entitled to relief when it relies on incorrect information provided by an insured in an insurance application if the information was material *either* to the insurer's decision to insure *or* to the terms of the contract." *Massachusetts Mut. Life Ins. Co. v. Manzo, supra,* 122 *N.J.* at 118, 584 *A.*2d 190 (emphasis added).

■ The *Manzo* Court interpreted the term "material" expansively, embracing the broad definition given by the Court of Errors and Appeals in *Kerpchak v. John Hancock Mut. Ins. Co.,* 97 *N.J.L.* 196, 117 *A.* 836 (E. & A.1922), and concluding that "the *Kerpchak* test comports with the legislative intent." *Massachusetts Mut. Life Ins. Co. v. Manzo, supra,* 122 *N.J.* at 116, 584 *A.*2d 190. There, our then highest court indicated that a false concealment of medical history on a life insurance application was material if "it would naturally and reasonably influence the judgment of the underwriter in making the contract at all, *or* in estimating the degree or character of the risk, *or* in fixing the rate of premium." *Kerpchak v. John Hancock Mut. Ins. Co., supra,* 97 *N.J.L.* at 198, 117 *A.* 836 (emphasis added). Hence, in determining whether a false statement is material, the focus is on the underwriter's view of the risk at the inception of the policy, not after a claim has been asserted. This conclusion is supported by the holding in *Longobardi v. Chubb Ins. Co.,* 121 *N.J.* 530, 541, 582 *A.*2d 1257 (1990),

where the Court indicated that the "materiality" of a false statement "should be judged as of the time when the misrepresentation is made [because] [i]n hindsight, the significance of an untruth may turn out to be greater or lesser than expected. [Therefore] [h]indsight ... is irrelevant to the materiality of an insured's misrepresentation." *Ibid.*

We believe that the motion judge misinterpreted the materiality test by analyzing the effect of plaintiff's misrepresentations on the "hazard assumed" by Mutual Benefit after the issuance of the policy, rather than at its inception. Although we agree with the judge that the false statements did not affect Mutual Benefit's decision to issue a disability income insurance policy to plaintiff because, as Mutual Benefit conceded, it would have issued plaintiff a policy even if it had known of plaintiff's true income and knee condition, we disagree that the misrepresentations did not affect "the hazard assumed" by Mutual Benefit. Mutual Benefit would have issued a policy significantly different from the one offered here had it not been misled by plaintiff. Hence, plaintiff's false statements were "material" to "the hazard assumed" or, to state it another way, "to the terms of the contract" at its inception. *See Massachusetts Mut. Life Ins. Co. v. Manzo, supra,* 122 *N.J.* at 118, 584 *A.*2d 190. Consequently, plaintiff was not entitled to recover any benefits under the contract and Mutual Benefit's motion for summary judgment rescinding the policy should have been granted. As the *Manzo* Court observed, the law "should encourage insureds to tell the truth, not to conceal information from the insurer and gamble that they will not die [or be disabled from] a concealed disease." *Ibid.* Plaintiff failed to tell the truth in his application for disability insurance and cannot now be heard to complain.

Reversed.